## Meier v. Heritage House

*Walter T. Grabowski,* for plaintiff.
*James B. Jordan,* for defendant.

PODCASY, *J.,* June 27, 1990 — This matter arises on the preliminary objections to plaintiff's complaint filed by the captioned defendant.

Plaintiff, Janice Meier, initiated this action relative to her discharge from her employment with defendant, Heritage House, on October 7, 1988. Plaintiff was employed as a charge nurse with defendant on said date.

The complaint avers that two of Meier's Heritage House supervisors summoned her to their office on said date and demanded her resignation, informing her that she should resign or be fired. The supervisors advised her that she was being fired because of her attitude toward other Heritage House employees. Plaintiff avers that she resigned because she believed she would otherwise be fired.

On October 9, 1988, plaintiff applied for unemployment compensation benefits and was initially denied. Plaintiff avers that Heritage House filed information and raised certain issues that constituted a question of "willful misconduct." As such, plaintiff alleges that the Heritage House took actions and in turn conducted the discharge in a

manner that would render her ineligible for unemployment compensation benefits.

Count I of the complaint avers that the discharge was undertaken in such a manner so as to have a direct and detrimental effect on Meier's ability to subsequently collect Pennsylvania Unemployment Compensation. Plaintiff avers that the actions of Heritage House violated a stated and established public policy of the commonwealth, specifically section 752 of the Pennsylvania Unemployment Compensation Law, 43 P.S. §752.

Count II of the complaint avers that reasons given by Heritage House for plaintiff's discharge were made without any basis and, in fact, were improper, malicious and made with specific intent to harm plaintiff, or in reckless disregard of their probable effect. The averment again centers on the ability of plaintiff to collect unemployment compensation benefits.

Count III of the complaint avers that plaintiff's contract of employment with Heritage House included an implied covenant of good faith and fair dealing and defendant's action breached the same.

Meier seeks judgment in excess of $20,000 plus punitive damages and costs associated with her loss of wages, economic benefits, humiliation and emotional harm.

Defendant brings forth the present preliminary objections in the nature of a demurrer to all three counts on the basis that plaintiff has failed to state a claim for which relief may be granted.

A preliminary objection in the nature of a demurrer admits every well-pleaded fact and all inferences reasonably deducible therefrom. *McGaha v. Matter,* 365 Pa. Super. 6, 8, 528 A.2d 988, 989 (1987); *Pike County Hotels Corp. v. Kiefer,* 262 Pa. Super. 126, 133, 396 A.2d 677, 681 (1978). A demurrer that

tests the legal sufficiency of the challenged complaint will be sustained only in cases where the pleader has clearly failed to state a claim for which relief may be granted. *Mudd v. Hoffman Homes for Youths Inc.,* 374 Pa. Super. 522, 524, 543 A.2d 1092, 1093 (1988). If there is any doubt as to whether a claim for relief has been stated, the trial court should resolve it in favor or overruling the demurrer. *Mull v. Kerstetter,* 373 Pa. Super. 228, 229-30, 540 A.2d 951, 951 (1988).

With this standard as our polestar, we will review defendant's objections seriatim.

First, defendant contends that absent a contractual or statutory provision to the contrary, the relationship between an employer and employee is at will, and in such circumstances there exists no common-law action for wrongful discharge. *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1974); *Darlington v. General Electric,* 350 Pa. Super. 183, 504 A.2d 306 (1986). We agree with this contention.

Our courts, however, have acknowledged that if a discharge was made with a specific intent to harm the employee, or if discharge contravened a clear mandate of public policy, an action for wrongful discharge could lie. See *Mudd v. Hoffman Homes for Youth,* 374 Pa. Super. 522, 543 A.2d 1092 (1988); *Tourville v. Inter-Ocean Insurance Co.,* 353 Pa. Super. 53, 508 A.2d 1263 (1986), allocator denied 514 Pa. 619, 512 A.2d 933 (1986); *Darlington v. General Electric, supra.*

The operable question in the first instance, considering the averments of count I, is whether the discharge of an employee at will, done in such a manner as to preclude unemployment compensation, is actionable.

Our research has revealed but one case on this particular subject, and we view the same to be controlling. The Federal District Court for the Western District of Pennsylvania in *Monkelis v. Scientific Systems Services,* 653 F.Supp. 680 (W.D. Pa. 1987), held that a plaintiff's allegation that a defendant contrived to prevent plaintiff from obtaining unemployment compensation, if true, would certainly contravene public policy. The court, therefore, found an actionable claim on this basis under the public-policy exception to the employment at-will doctrine. Given the high standard utilized by our courts in adjudicating a preliminary objection in the nature of a demurrer, we find the facts pleaded by plaintiff are sufficient and justify a denial of defendant's preliminary objections.

Defendant also argues that even if the manner of discharge is violative of public policy, there is an exclusive statutory remedy under the following section of the Unemployment Compensation Act. Section 872 of the act provides as follows:

"Any employer (whether or not liable for the payment of contributions under this act) or any officer or agent of such employer or any other person who makes a false statement or representation knowing it to be false, or who knowingly fails to disclose a material fact to prevent or reduce the payment of compensation to any employee entitled thereto, or to avoid becoming or remaining subject hereto [sic], or to avoid or reduce any contribution or other payment required from an employer under this act, or who willfully fails or refuses to make any such contribution or other payment or to furnish any reports required hereunder, or who willfully fails or refuses to produce or permit the inspection or copying of records as required hereunder, shall, upon conviction thereof in a summary proceeding,

be sentenced to pay a fine of not less than $50 nor more than $500, and in default of the payment of such fine and costs shall be sentenced to imprisonment for not longer than 30 days, and each such false statement or representation or failure to disclose a material fact, and each day of such failure or refusal shall constitute a separate offense."

We disagree, finding that the section relates solely to criminal sanctions imposed on violative parties and is not intended as a substitute for recognized civil cause of an action.

Defendant's demurrer to count II contends that the averments do not meet the requirements of the specific-intent-to-harm exception to the employer's right to terminate an at-will employee.

In *Tourville v. Inter-Ocean Insurance Co., supra,* the Superior Court utilizing directives of *Geary, supra,* attempted to define this specific-intent-to-harm exception to the at-will employee doctrine. The court directs us to search for the existence of one of two factors, disinterested malevolence or ulterior purpose. The court defined disinterested malevolence as follows:

"By this we take it to mean that there was no proper interest involved in the malevolent act, that there was no reason for the action (other than an atavistic desire to hurt another). This, certainly, is something that the trial court can look for in the pleadings or in the evidence at trial to test the legal sufficiency of a case. If there is not present a cause, which in every day, civilized life would serve as the basis for the action, then the malevolence surely is pure, unadulterated and disinterested." (footnotes omitted)

The court spoke on ulterior purposes as follows:

"[A] harmful action is done with sufficient reason (unlike our first type), but it is done with an ulterior

motive — to harm the other party. . ... [T]hat what is harmfully done is beyond the necessity of the justified harmful act. The quality of maliciousness could be discovered by the lack of proportionality or the impropriety or viciousness with which a thing is done." *Tourville v. Inter-Ocean Insurance Co.* at 57-8, 508 A.2d at 1266; see also, *Darlington v. General Electric, supra.*

Given this standard, we believe that factual averments of the complaint fall within the realm of "ulterior purpose." This is particularly so with relation to averments that defendant orchestrated and contrived the discharge with the intent to insure that plaintiff was refused unemployment compensation benefits. We therefore deny and dismiss defendant's demurrer to count II.

Defendant's next demurrer centers on plaintiff's count III averments that defendant breached the covenant of good faith and fair dealing. In reviewing this issue, we cannot overlook the clear lack of Pennsylvania case precedent implying the existence of the covenant of good faith and fair dealing in circumstances similar to the instant.

In *Darlington v. General Electric, supra,* at 196, 504 A.2d at 312, the court openly refused to imply the covenant in at-will-employee circumstances, citing language from the Connecticut Supreme Court precedent of *Magnan v. Anaconda Industries Inc.,* 193 Conn. 558, 579 A.2d 781 (1984). The court stated:

" 'Although we endorse the applicability of the good faith and fair dealing principle to employment contracts, its essence is the fulfillment of the reasonable expectations of the parties. Where employment is clearly terminable at will, a party cannot ordinarily be deemed to lack good faith in exercising this contractual right.' "

Absent any directives persuading us to the contrary, we find plaintiff lacking a viable cause of action in count III and presently grant defendant's demurrer. We concomitantly dismiss this count.

Lastly, defendant raises the deficiency of plaintiff's prayer for punitive damages. In our view, the allegations, if true, may constitute such outrageous conduct as to warrant an award of punitive damages. Whether the allegations will prove to be competent evidence remains to be seen. The court, however, finds at this stage there are sufficient allegations of the same. See *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742 (1984).

### ORDER

It is hereby ordered, adjudged and decreed as follows:

(1) Defendant's demurrer to counts I and II of plaintiff's complaint are denied and dismissed;

(2) Defendant's demurrer to count III of plaintiff's complaint is granted. Count III of plaintiff's complaint is dismissed; and

(3) The prothonotary is directed to mail notice of entry of this order to all counsel of record pursuant to Pa.R.C.P. 236.